UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF
TENNESSEE EASTERN DIVISION

| | |
|---|---|
| LOUIS SAIA, Plaintiff, | ) |
| | ) |
| vs. | ) |
| | ) |
| FJ MANAGEMENT, INC. d/b/a FLYING J, INC., FLYING J INSURANCE SERVICES, INC., and/or its Successor, THE BUCKNER COMPANY, TRANSPORTATION ALLIANCE BANK, INC., TRANSPORTATION ALLIANCE LEASING, LLC, TAB BANK, INC., TAB BANK, INC. d/b/a TRANSPORTATION ALLIANCE LEASING, LLC, JAGJIT "J.J." SINGH, STEPHEN PARKER, JOHN DOES A, B, and C, AND JANE DOES A, B, and C, | ) NO. 15-cv-1045 <br> ) JURY TRIAL DEMANDED <br> ) <br> ) RECEIVED BY <br> ) _SLC_ <br> ) <br> ) OCT 1 6 2015 <br> ) Thomas M. Gould, Clerk <br> ) U.S. District Court <br> ) W. D. OF TN, Jackson |
| Defendants. | ) |

**OPPOSITION TO MOTION TO DISMISS OF DEFENDANT, JAGJIT "JJ" SINGH**

NOW INTO COURT, as *Pro Se'* Plaintiff, Louis Saia, who respectfully submits his Opposition to the Motion to Dismiss of Defendant, JAGJIT "J.J." SINGH ("Defendant Singh"), as follows:

### INTRODUCTION

This case arises out of a decision that the Defendants made to engage in a RICO scheme that would ultimately and illegally liquidate the assets of St. Michael Motor Express ("St. Michael"), Plaintiff's company, and unjustly obtain settlements and judgments on both Louis and Ann Saia. The Defendants herein are brazen in that they effectively manipulate the judicial process to accomplish their goals.

The decision to initiate the plan began in the weeks prior to St. Michael's annual

1

insurance renewal. At this time St. Michael's was in a re-organization Bankruptcy Proceeding.[1] Defendant's TAB Bank and TAL made an emergency motion to lift the automatic stay[2] and repossess St. Michael's fleet essentially closing the business. The motion was later found out to be fraudulent and deceived the court and all other parties involved.

This motion alleges that Defendant Flying J Ins. could not obtain an insurance quote for St. Michael. The only shred of support to this motion's allegations is a June 2009 notice of non-renewal from Carolina Casualty Insurance, one of the underwriters that worked with Flying J. Ins. (See attached Exhibit 1). The motion fails to state that Katie London of Flying J. Ins. had assured Plaintiff several times that a quote would be obtained from another underwriter. Believing the motion to the TN Bankruptcy Court to be true, Plaintiff hesitantly consented to the motion since he knew he could not procure an insurance quote of that size within a day. From his experience as a trucker for over twenty (20) years he knew it would take a few weeks to secure a quote of 60 trucks with cargo needs. Mr. Saia had no options and consented to the motion in order to save 1.5 million pounds of perishable cargo on refrigerated semi trucks and get St. Michael's truck drivers home. This consent was coerced by assurances from Stephen Parker of TAB, that TAB would quickly take repossession of trucks, obtain insurance, deliver the perishable cargo and bring St. Michael's drivers home to their families. Approximately 70 families in Jackson, TN lost their jobs with no notice on September 23, 2009.

Defendants' motion to the TN Bankruptcy Court was proven to be fraudulent during March of 2012. (See attached Exhibit 3).[3] Alisa Rogers, attorney for Plaintiff at the time, found

---

[1] *In Re Saint Michael Motor Express*, US Bankruptcy Court, Western District of Tennessee, Eastern District Case No. 08-11838
[2] *In Re Saint Michael Motor Express*, US Bankruptcy Court, Western District of Tennessee, Eastern District Case No. 08-11838 – Emergency Motion of Transportation Alliance Bank and Transportation Alliance Leasing LLC to Terminate Automatic Stay and For Abandonment. (See attached Exhibit 2).
[3] Email between counsel and Plaintiff regarding discovery of the insurance quote.

2

irrefutable evidence that the collective Defendants had received an insurance quote on September 16, 2009 six (6) days before filing the fraudulent motion with the TN Bankruptcy Court. TAB Defendants wrote a Consent Order that also provided TAB the ability to illegally loot and convert St. Michael's A/R accounts in an amount of $300,000 to $400,000. Additionally, the scheme launched by Mr. JJ Singh would involve manipulating other Courts filing suit against the Saias for a deficit in the A/R accounts of St. Michael and for fraudulently inducing default of St. Michael's $800,000 line of credit that the Saia's had personally guaranteed. The Defendants conceal from the state courts their bad acts and file lawsuits against the Saias with unclean hands.

What the Defendants fail to point out is that this Complaint (R. Doc. 1), unlike the Utah complaints, arise under the Racketeer Influenced and Corrupt Organizations Act (RICO) 18 U.S.C. 1961. The Utah cases never alleged RICO but rather centered on the allegation of fraud by the TAB Defendants fraudulent motion to the TN Bankruptcy Court. **This present complaint alleges RICO due to several new causes of action that did not take place until after the Utah counterclaims were dismissed due to "lack of standing".** Defendants' additional actions and new discovery sufficiently establish a pattern of a RICO scheme against the Plaintiff. Additionally, Plaintiff did not discover other acts of theft and conversion of assets belonging to St. Michael until the Trustee, Ms. Marianna Williams, reopened the St. Michael Bankruptcy case on September 11, 2012. All of the post Chapter 7 theft and conversation of assets had a direct impact on what amount of money that would be owed on the personal guaranties. **Plaintiff asserts that the Complaint (R. Doc. 1) includes three new causes of action and seven total predicate acts essential to establishing the pattern of racketeering activity directed toward Plaintiff and his mother.**

3

Your Honor will hear a lot about the Utah Complaints and the Defendants will again attempt to mislead the Court to believe that the Plaintiff "had his day in Court." In fact, the truth is there were two Utah Complaints filed by the Plaintiff. The first was in the form of a Third Party Complaint and Counterclaims filed by Ann and Louis Saia in the original suit brought by Transportation Alliance Bank, Inc. against Louis and Ann Saia on October 29, 2010. (See attached Exhibit 4).[4] This case was assigned to Judge West. Plaintiffs' Utah attorneys then filed a "placeholder" stand alone suit on September 30, 2011 with the intention of dismissing that suit if Judge West allowed the Third Party Complaint and Counterclaims to go before his court. The "placeholder" stand alone suit was assigned to Judge Scott Hadley. The counter claims and third party suit were allowed to go forward in early 2012 before Judge West, as part of the original suit filed by Transportation Alliance Bank. On March 1, 2012, attorneys for Plaintiffs filed a Rule 41(a) Notice of Voluntary Dismissal in the "placeholder" suit assigned to Judge Hadley. (See attached Exhibit 5). All of the parties agreed that the "placeholder" stand alone suit was duplicative of the counter claims and third party complaint in Judge West's court and to dismiss the suit with each party to bear their own costs. (See attached Exhibit 6).[5] Once the Rule 41(a) dismissal was filed by Plaintiffs, TAB Bank still filed a Motion to Dismiss and for Attorneys' Fees. (See attached Exhibit 7).[6] While Defendants claim this suit is *res judicata* they stated in their own Motion to Dismiss that the [Utah] case is "containing the same allegations against TAB and the above captioned defendants as those set forth in the Complaint, in a lawsuit pending before the Honorable W. Brent West..."; therefore, their own motion shows this Court it

---

[4] *Transportation Alliance Bank, Inc., et al vs. Ann M. Saia Louis P. Saia, III*, bearing case no. 100908498 in the 2nd Judicial District Court of Utah, Weber County, Ogden Department – Third Party Complaint and Counter Claim.
[5] Email correspondence agreeing to dismissal with each party to bear their own costs.
[6] *Ann M. Saia Louis P. Saia, III vs. Transportation Alliance Bank, Inc., et al*, bearing case no. 110906790 in the 2nd Judicial District Court of Utah, Weber County, Ogden Department - TAB Bank's Motion to Dismiss and for Attorneys' Fees.

4

was not heard on merits but voluntarily dismissed. However, the Defendants in an effort continued to manipulate what really happened and present to this Court that Judge Hadley's Order states the case is dismissed "with prejudice and on the merits". This defies logic when you read the Motion to Dismiss filed by TAB and consider the Rule 41(a) dismissal. **Nevertheless, Defendants all agreed that the identical third party complaint and counter claims in Judge West's court would continue to be litigated despite Judge Hadley's Order stating the claims are dismissed "with prejudice and on the merits".** It is important to note that Plaintiffs Third Party Complaint and Counterclaims were amended on May 14, 2012[7] to plead and demonstrate that the Defendants did in fact have an insurance quote[8] for St. Michael Motor Express ("St. Michael") and that they concealed and lied in a motion filed in St. Michael's bankruptcy proceeding.[9] This proves the timeframe in which the evidence of fraud was actually discovered in that an insurance quote actually existed. The Complaint dismissed in Judge Hadley's Court did not contain the May 14, 2012 amendments of the pleadings in Judge West's court since the discovery of the Carolina Casualty quote did not occur until mid-March. Judge Hadley's case was voluntarily dismissed on March 1.

The original pleadings in both Utah Complaints assert fraud and misrepresentation with regard to the Defendants' multiple statements assuring Saia that St. Michael would be provided an insurance quote and that Saia was not notified until the day of renewal. **Plaintiff amended its Third Party Complaint and Counterclaims only after Plaintiffs' attorney found documents from Carolina Casualty Insurance, the underwriter, which proves that both Flying J Ins.**

---

[7] *Transportation Alliance Bank, Inc., et al vs. Ann M. Saia Louis P. Saia, III*, 2nd Judicial District Court of Utah, Weber County, Ogden Department, case no. 100908498–Amended Third Party Complaint and Counter Claim. (See attached Exhibit 8).
[8] See attached Exhibit 9 – Insurance Quote from Carolina Casualty for St. Michael Motor Express dated 9.16.2009
[9] See Exhibit 10 - *In Re Saint Michael Motor Express*, US Bankruptcy Court, Western District of Tennessee, Eastern District Case No. 08-11838; Emergency Motion to Transportation Alliance Bank and Transportation Alliance Leasing LLC for Lift of Automatic Stay.

5

**and TAB Defendants had received St. Michael's insurance quote six (6) days before filing the fraudulent motion in the TN Bankruptcy Court stating that no insurance quote could be obtained.**[10] The Plaintiff never filed RICO claims with the Utah court since Plaintiff was unaware of all the predicate acts that would occur or be discovered at later dates as is outlined in the Plaintiff's Supplemental and Amending Complaint of this case. Ultimately, Judge West dismissed the Plaintiffs' Third Party and Counterclaims "due to lack of standing".[11] In conclusion, the Utah Court dismissed the Saia's Complaint due to procedural issues and not on the merits; therefore, it is a deception to assert that the "Saias" had their day in court" or that the Utah case was dismissed on merits with prejudice. It was dismissed on standing not on merits.

Plaintiff has multiple new defendants and causes of action in this case, than it did in the Utah Complaints. Plaintiff asserts RICO in this Complaint due to additional discovery of evidence and additional causes of action that occurred after Plaintiffs' Utah claims were dismissed. **Unlike in the Utah case, Plaintiff asserts here that Defendants, directed by Mr. Singh, launched a RICO scheme that targeted the assets of St. Michael, personal monies of Ann Saia and personal monies of Louis P. Saia, III.**

Plaintiff's amended pleadings establish a timeline pattern that includes at least seven (7) predicate acts, spanning over six (6) years. Plaintiff and his mother Ann Saia have lost millions in cash and/or Judgments entered against Mr. Saia that are accruing at 30% and 28.8% interest. Plaintiff asserts that he and his mother were personal targets in the RICO scheme, launched by Defendant Singh, in that they were perceived as rich and the "heirs of Saia Motor Freight Lines". Accordingly, Plaintiff believes he should have "his day in court" and be allowed his 14th

---

[10] See attached Exhibit 9 - insurance quote dated September 16, 2009, six days before the hearing on September 23, 2009.

[11] *Transportation Alliance Bank, Inc., et al vs. Ann M. Saia Louis P. Saia, III* 2nd Judicial District Court of Utah, Weber County, Ogden Department, case no. 100908498 – Judge West's Ruling on TAB Defendants Motion to Dismiss Third Party Complaints and Counterclaims. (See attached Exhibit 11).

6

Amendment right of due process. Clearly, the other side will assert that this case is the same as the Utah cases and that could not be further from the truth. Plaintiff should have standing in this case since he was personally targeted as part of a RICO scheme.

Plaintiff's causes of action should be allowed to survive Defendants' claims that these issues have already been decided on merits and therefore, constitute *res judicata*. In fact, Plaintiff's Complaint in Utah was dismissed due to lack of standing which is not on merits, despite Defendants manipulative suggestion that it was with prejudice and on the merits. This suggestion is another attempt to deceive the court system. **Quite simply, Judge West's ruling was the last ruling in Utah.**

As for the issue of collateral estoppel Plaintiff submits that the very Order signed by Judge West in the Utah Court's ruling to dismiss Plaintiffs' counter claims is simply for "lack of standing" and not on the merits. The Order states "Finally, any fraudulent statement made by TAB or Flying J cannot provide standing because those statements were made to Mr. Saia in his capacity as owner of St. Michael's, and any injury suffered is derivative of the injury to St. Michael's" further verifying that the cause of action was never heard before the court. However, this Complaint before this Court is much different as it alleges Plaintiff was personally a target of a RICO scheme. This current suit pleads more causes of action and lays out the predicate acts required to establish a pattern as a part of a RICO scheme.

Finally, Defendants claim that this action is an impermissible collateral attack on the TN Bankruptcy Court's Consent Order that was obtained through fraud and coercement of the Plaintiff. See *Wilcox vs. First Interstate Bank of Oregon, N.A.*, 815 F.2d 522 (C.A. 9 (Or.), 1987) wherein the borrowers contend that the "elements of their RICO claims are not identical to the elements of common law fraud and hence could not have been decided on the prior action....

"We need not decide if the elements are identical because collateral estoppel cannot apply...." Also, see *United States v. One Assortment of 89 Firearms*, 465 U.S. 354, 362, 104 S.Ct. 1099, 1104, 79 L.Ed.2d 361 (1984) wherein the court decided that differences in relative burdens of proof preclude application of collateral estoppel. (cited therein *Standlee v. Rhay*, 557 F.2d 1303, 1305 (9th Cir. 1977). Accordingly, Plaintiff believes it is up to this Court to hear the evidence on merits as it would relate to a RICO scheme targeting the Plaintiff specifically as laid above and in his Complaint and now Amended and Supplemental Complaint. Furthermore, this Court can hear the evidence and only rule on claims of the Plaintiff essentially leaving the claims of St. Michael undisturbed.

As for Jagjit "JJ" Singh ("Defendant Singh") he has underplayed his role as the "mastermind" in his motion to dismiss. Plaintiff asserts that the pleadings assert Defendant Singh was in full control of Flying J Insurance ("Flying J Ins."), Transportation Alliance Bank, Inc. ("TAB Bank") and Transportation Alliance Leasing, LLC ("TAL"). Defendant Singh also reported to have influence on financial matters relative to Flying J. Inc. ("Flying J").

As to page 23 of the Defendant Singh's motion to dismiss Section B "the fraud claims should be dismissed and is barred by this state's statute of limitations". This Court should decide on when the statute of limitations prescribe not Defendant Singh. The Plaintiff pleads that the statute of limitation should begin to run in March 2012 when Plaintiff discovered the insurance quote that was not purported to exist. (See attached Exhibit 12).[12]

On page 24 Section 2 of Defendant Singh's Motion to Dismiss, Singh states that the "fraud claims against Mr. Singh is not pleaded with particularity." Plaintiff asserts that if Defendant Singh was not in control of the multiple Flying J companies and the RICO scheme would have never been perpetrated. Plaintiff believes and has information to believe that

---

[12] Email from counsel to Plaintiff establishing when insurance quote was found. (March 2012.)

Defendant Singh directed the RICO scheme and moreover conceived the RICO scheme. Every phone call, e-mail and/or wire transfer was done at the direction of Mr. Singh, "the mastermind".

Plaintiff will assert that despite Defendant Singh's leaving Flying J the RICO scheme was conceived and was in motion and has not stopped until this day. Mr. Singh should not be dismissed from this Complaint because he was the "mastermind" of it all.

Plaintiff prays that this Court will deny Defendants Motion to Dismiss for all the reasons set forth above.

Respectfully Submitted,

*/s/ Louis P. Saia, III*
Louis P. Saia, III

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing pleading and attachments will be served on all counsel via email, facsimile, depositing a copy of same in the U.S. mail postage properly pre-paid and properly addressed and/or through the Court's ECF electronic system to all known parties on this the 16th day of October, 2015.

*/s/ Louis P. Saia, III*
Louis P. Saia, III