# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF TENNESSEE
# EASTERN DIVISION

| | |
|---|---|
| LOUIS SAIA,<br><br>**Plaintiff,**<br><br>vs.<br><br>FLYING J, INC.,<br>FJ MANAGEMENT, INC. d/b/a FLYING J, INC.;<br>FLYING J. INSURANCE SERVICES, INC. and/or its Successor, THE BUCKNER COMPANY;<br>TRANSPORTATION ALLIANCE BANK, INC.;<br>TRANSPORTATION ALLIANCE LEASING, LLC; TAB BANK, INC.; TAB BANK, INC. d/b/a/ TRANSPORTATION ALLIANCE LEASING, LLC; JAGIT "J.J." SINGH, STEPHEN PARKER, JOHN DOES A, B, and C AND JANE DOES A, B, and C,<br><br>**Defendants.** | No. 15-cv-01045-STA-egb |

## ORDER DENYING DEFENDANTS' JOINT MOTION FOR SANCTIONS

Before the Court are Defendants Transportation Alliance Bank, Inc.; Transportation Alliance Leasing, LLC; Stephen Parker; FJ Management, Inc. d/b/a Flying J, Inc.; Flying J Insurance Services, Inc. and/or its Successor The Buckner Company's Joint Motion for Sanctions (ECF No. 50) filed on June 11, 2015. Plaintiff Louis Saia filed suit on March 2, 2015, and proceeded with counsel until the United States Magistrate Judge granted counsel's motion to withdraw on June 11, 2015. On July 1, 2015, the Magistrate Judge gave Plaintiff 90 days in which to retain new counsel or act *pro se*. On September 28, 2015, Plaintiff filed notice with the Court of his intent to proceed *pro se*, and on October 1, 2015, the Court ordered Plaintiff to respond to

Defendants' Joint Motion for Sanctions. Plaintiff filed his opposition to the Joint Motion for Sanctions (ECF No. 65, 67) on October 16, 2015, and supplemented his response (ECF No. 69) on October 29, 2015. Defendants' Joint Motion for Sanctions is now ripe for determination. For the reasons set forth below, the Joint Motion is **DENIED**.

## BACKGROUND

The Court has set out the factual background of this matter in previous orders and need not review the full procedural history of the case here. Briefly, Plaintiff's Complaint alleged claims against Defendants for fraud, tortious conspiracy, a civil claim for violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), fraudulent concealment, negligent misrepresentation, malicious prosecution, abuse of process, and common law unconscionability. Plaintiff alleged that Defendants acted in concert to take control of Saint Michael Motor Express ("St. Michael"), a Tennessee corporation in the business of providing over-the-road transportation services for goods and products in the United States and, in particular, refrigerated transport services. Plaintiff was the sole shareholder and president of St. Michael. Defendants and their related entities provided a variety of financial services to St. Michael and ultimately took control of St. Michael's assets. Defendants did so, according to the Complaint, by making false representations to Plaintiff and to the United States Bankruptcy Court where St. Michael had filed for Chapter 11 bankruptcy reorganization and protection.

On March 28, 2016, the Court entered an order granting Defendants' motions to dismiss the Complaint. In support of their Rule 12(b)(6) motions, Defendants raised a number of arguments for dismissal, including res judicata (in light of previous litigation between these parties in the state of Utah), collateral estoppel, standing, the *Rooker-*

*Feldman* doctrine, timeliness, and failure to state a claim. The Court concluded that it was unnecessary to reach all of the issues presented in Defendants' motions to dismiss and held as a threshold matter that Plaintiff lacked standing to bring claims that properly belonged to his company St. Michael. Therefore, the Court dismissed the Complaint for lack of standing. Subsequent to the Court's merits ruling on the initial Complaint, the Magistrate Judge denied Plaintiff's motion for leave to file an amended complaint. The only issue remaining for the Court to decide is Defendants' request for sanctions.

In their Joint Motion for Sanctions, Defendants seek sanctions against Plaintiff under Rule 11 of the Federal Rules of Civil Procedure.[1] Defendants request the dismissal of the Complaint and an award of their attorney's fees for the preparation of their motions to dismiss and the instant Motion for Sanctions. Defendants argue that sanctions are appropriate for two reasons: (1) a reasonable attorney or party would have known that Plaintiff's claims and other legal contentions were not warranted by existing law or supported by a nonfrivolous argument for extending existing law; and (2) Plaintiff filed the Complaint in this Court for an improper purpose.

Concerning the reasonableness of Plaintiff's claims and legal contentions, Defendants argue that Plaintiff's attorney should have known his Complaint was barred as res judicata and the doctrine of issue preclusion after a Utah court dismissed some of the same claims for lack of standing. Counsel also should have known that Plaintiff lacked standing to assert the claims because St. Michael's adversary proceeding in bankruptcy court involving the same causes of action is ongoing. Under the

---

[1] Defendants' Joint Motion requests sanctions against Plaintiff only while their memorandum in support requests sanctions against both Plaintiff and his former attorney. The Court discusses this fact more fully below.

circumstances, only St. Michael's bankruptcy trustee has standing to pursue the claims. Defendants go on to argue that counsel should have known that Plaintiff's claims for malicious prosecution, abuse of process, and unconscionability were not good at law and that the *Rooker-Feldman* doctrine precluded Plaintiff's causes of action. Defendants believe then that sanctions under Rule 11(b)(2) are warranted for any and all of these reasons.

Likewise, Defendants argue that Plaintiff filed suit for an improper purpose and therefore should face sanctions under Rule 11(b)(1). Plaintiff already had his day in court in Utah, and the Utah court ruled against him. Plaintiff should have reasonably known that he could not assert the same causes of action by bringing a complaint in federal court in Tennessee. Defendants contend then that Plaintiff's filing implies an improper purpose and the intent to force Defendants to incur the additional expense of litigating the same claims in this forum. Thus, Defendants argue that sanctions under Rule 11(b)(1) are appropriate.

Defendants' memorandum refers extensively to Plaintiff's counsel and the reasonableness of counsel's decision to file this suit under Rule 11(b)(2). The Magistrate Judge granted counsel's motion to withdraw on June 11, 2015, the same day Defendants filed their Rule 11 Motion. Defendants did not oppose counsel's motion to withdraw. In light of counsel's decision to withdraw, Defendants clarify in their Joint Motion that they seek sanctions against Plaintiff only. Defendants explain that the memorandum in support of their Joint Motion argues for sanctions against Plaintiff and his attorney because Defendants in an effort to comply with Rule 11(c)(2)'s safe harbor provision served the memorandum on the attorney prior to filing the memorandum with the Court.

Defendants state in a footnote to the Joint Motion that they elected to file the same memorandum making allegations against Plaintiff's attorney with the Joint Motion for Sanctions despite the fact that counsel had withdrawn so as "to avoid a resetting of the 21-day safe harbor provision" under Rule 11(c)(2).

Following an extended delay in which Plaintiff attempted to retain new counsel, Plaintiff ultimately filed a *pro se* response to the Joint Motion for Sanctions. Plaintiff asserts that Defendants filed their Joint Motion "to deprive Plaintiff of counsel." Plaintiff denies that he filed his suit in this Court for an improper purpose or in any way to attack the judgment of the Utah court. Plaintiff maintains that the judgment against him in Utah was the product of a fraud perpetrated by Defendants on the court. Plaintiff addresses each of Defendants' separate arguments to defend the reasonableness of his claims for relief and show that sanctions would not be proper under Rule 11(b)(2). Plaintiff concludes with his own request that the Court sanction Defendants for their conduct.

## **STANDARD OF REVIEW**

Rule 11(b) of the Federal Rules of Civil Procedure governs representations made to the Court and establishes that when an attorney or unrepresented party signs, files, submits, or "later advocat[es]" a pleading, written motion, or the like, the attorney or party certifies to the Court that

> (1) it is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation;
>
> (2) the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law;
>
> (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and

5

(4) the denials of factual contentions are warranted on the evidence or, if specifically so identified, are reasonably based on belief or a lack of information.[2]

Rule 11(c)(1) grants the Court discretion to "impose an appropriate sanction" on an attorney or party "[i]f, after notice and a reasonable opportunity to respond, the court determines that Rule 11(b) has been violated."[3]

## ANALYSIS

The issue presented is whether the Court should sanction Plaintiff, who is now *pro se*, for filing a Complaint with the assistance of counsel containing claims and legal contentions without any warrant under existing law and/or for some improper purpose. "Rule 11 expressly provides the district court with discretion to impose sanctions on a party that is responsible for the rule's violation, provided that the violation is not one for unwarranted legal contentions under Rule 11(b)(2)."[4] The Advisory Committee notes that Rule 11 "permits the court to consider whether. . . the party itself should be held accountable for [his] part in causing a violation" and to "make an additional inquiry in order to determine whether the sanction should be imposed on. . . parties either in addition to or, in unusual circumstances, instead of the person actually making the presentation to the court."[5] The Sixth Circuit has noted that courts have generally

---

[2] Fed. R. Civ. P. 11(b).

[3] Fed. R. Civ. P. 11(c)(1).

[4] *Rentz v. Dynasty Apparel Indus., Inc.*, 556 F.3d 389, 398 (6th Cir. 2009); Fed. R. Civ. P. 11(c)(1) & (c)(5)(A).

[5] Fed. R. Civ. P. 11 Advisory Committee Notes (1993 Amendments).

declined to impose sanctions on represented parties,[6] except perhaps when the party, along with the attorney, misrepresented key facts during depositions and at trial.[7]

By its own terms, Rule 11 also applies to an "unrepresented party."[8] "[P]ro se filings do not serve as an impenetrable shield, for one acting *pro se* has no license to harass others, clog the judicial machinery with meritless litigation, and abuse already overloaded court dockets."[9] In other words, "[p]ro se plaintiffs are not exempt from Rule 11 sanctions simply because they are not represented by counsel."[10] Nevertheless, the Court retains the "discretion to take account of the special circumstances that often arise in *pro se* situations."[11] One court has concluded that "[c]ourts have generally refrained from sanctioning *pro se* plaintiffs under Rule 11 unless the plaintiff has filed multiple frivolous claims."[12]

Applying these principles to the case at bar, the Court holds that sanctions against Plaintiff would not be appropriate under the circumstances. First, Defendants seek

---

[6] *Rentz*, 556 F.3d at 398 (citing 5A Charles Alan Wright & Arthur R. Miller, Federal Practice & Procedure § 1336.2 (3d ed. 2004) ("Imposing a sanction on the client has met with disfavor.")).

[7] *Union Planters Bank v. L & J Dev. Co.*, 115 F.3d 378, 384-85 (6th Cir.1997).
[8] *See* Fed. R. Civ. P. 11(b).

[9] *In re Polyurethane Foam Antitrust Litig.*, --- F. Supp. ---, No. 1:10 MD 2196, 2015 WL 7313403, at *1 (N.D. Ohio Nov. 19, 2015) (quoting *Patterson v. Aiken*, 841 F.2d 386, 387 (11th Cir. 1988) (quotation marks omitted)).

[10] *King v. IB Property Holdings Acquisition*, 635 F. Supp. 2d 651, 661 (E.D. Mich. 2009) (citing *Graham v. Liberty Mut. Ins. Co.*, No. 1:08-cv-299, 2009 WL 1034942, *4 (E.D. Tenn. Apr. 17, 2009).

[11] Fed. R. Civ. P. 11 Advisory Committee Notes (1983 Amendments).

[12] *Russell v. Sanilac Cnty.*, No. 14-13134, 2015 WL 5626628, at *5 (E.D.Mich. Sept. 24, 2015) (collecting cases).

sanctions for the claims stated in Plaintiff's initial Complaint, a pleading prepared, signed, and filed by Plaintiff's former counsel. The Supreme Court has noted that "[r]equiring *pro se* litigants to make the Rule 11 certification ensures that, in each case, at least one person has taken responsibility for inquiry into the relevant facts and law."[13] But in this case that one person was Plaintiff's former attorney, not Plaintiff. Defendants have specifically disclaimed any request for sanctions against Plaintiff's former attorney. Although Plaintiff has arguably adopted the claims and theories embodied in his opening Complaint, the technical fact remains that Plaintiff did not sign the pleading and therefore did not make any of the representations to the Court enumerated in Rule 11(b).

Additionally, Defendants served Plaintiff's former attorney with the Joint Motion for Sanctions and its supporting memorandum to satisfy Rule 11(c)(2)'s safe harbor provision. Rule 11(c)(2) provides a "safe harbor" which requires a party seeking sanctions for violations of Rule 11 to make a separate motion and "describe the specific conduct alleged to violate subdivision (b)."[14] Importantly, the safe harbor requires the moving party to serve its motion for sanctions on the opposing party twenty-one (21) days before actually filing or presenting the motion to the court.[15] Defendants' service of the Rule 11 Motion on Plaintiff's attorney arguably prompted counsel to seek leave to withdraw. Defendants did not independently serve Plaintiff with their Joint Motion and the accompanying memorandum once the Magistrate Judge granted counsel's unopposed motion to withdraw, a strategy Defendants adopted to avoid restarting the 21-day safe

---

[13] *Bus. Guides, Inc. v. Chromatic Communs. Enters.,* 498 U.S. 533, 564 (1991).

[14] Fed. R. Civ. P. 11(c)(2).

[15] *Id.*

harbor period. It is not at all clear that Defendants were required to serve Plaintiff with the Joint Motion in order to satisfy the safe harbor rule, though the Sixth Circuit has required "strict adherence to the rule's outlined procedure."[16] In any event the Court need not decide whether Defendants did enough to comply with the safe harbor provision. The Court concludes that under the unique circumstances of this case, imposing sanctions on a *pro se* party for a pleading prepared and signed by the party's former attorney and after the attorney had withdrawn in response to a Rule 11 motion would not effectively promote Rule 11's deterrent purposes.

Second and perhaps more importantly, a finding of sanctionable conduct under Rule 11(b) would require the Court to assess whether Plaintiff's claims were frivolous for the reasons stated in Defendants' memorandum in support of the Joint Motion for Sanctions. The advisory committee notes to Rule 11(b)(2) describe the standard under this paragraph as an "objective" determination of whether "[a]rguments for extensions, modifications, or reversals of existing law or for the creation of new law" are "nonfrivolous" something more than an "empty-head pure-heart justification."[17] Defendants' memorandum argues a number of grounds for finding that the Complaint's legal claims were unwarranted: res judicata (issue preclusion), the concept of the bankruptcy estate and the ongoing nature of St. Michael's bankruptcy proceedings, the failure to state three of the claims, and the *Rooker-Feldman* doctrine. However, the Court dismissed Plaintiff's Complaint for lack of standing under Article III and as a matter of Tennessee law, finding it unnecessary to reach all of Defendants' arguments for

---

[16] *Penn*, 773 F.3d at 768.

[17] Fed. R. Civ. P. 11 Advisory Committee Notes (1993 Amendments).

dismissal of the Complaint. The Court never considered Defendants' arguments for issue preclusion or any of the other grounds raised in support of the Joint Motion for Sanctions. In short, the Joint Motion for Sanctions would now require the Court to analyze a number of legal questions to assess whether Plaintiff's Complaint was frivolous when the Court already found it unnecessary to consider some of the same legal questions to decide the case on the merits. The Court holds that such an inquiry would not advance the purposes of Rule 11 under the circumstances of this case. For the same reasons, the Court declines to sanction Plaintiff under Rule 11(b)(1) for bringing suit for some improper purpose. Therefore, Defendants' Joint Motion for Sanctions will be **DENIED**.

The Court stresses that the issue of sanctions presents a close call in this case. The Court recognizes that Plaintiff filed some of the same causes of action in a previous suit between most of the same parties and had his claims dismissed. Defendants have also correctly pointed out that Plaintiff's Complaint in this case bears a striking similarity to the pleadings in St. Michael's adversary proceeding before the bankruptcy court. Plaintiff is cautioned that the Court will not look favorably on Plaintiff's conduct should he in the future raise, either through counsel or *pro se*, substantially similar claims against any of these same Defendants or their privies in a suit filed with this Court,.

**IT IS SO ORDERED.**

s/ S. Thomas Anderson
S. THOMAS ANDERSON
UNITED STATES DISTRICT JUDGE

Date: April 27, 2016.